## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THOMAS W. OLICK,**<br>        **Plaintiff,**<br><br>                **v.**<br><br>**JAMES KEARNEY, et al.,**<br>        **Defendants.** | **CIVIL ACTION NO. 06-1531** |

### MEMORANDUM AND ORDER

**KATZ, S.J.**                                                    **September 11, 2006**

### I.  Introduction

Before the court are the Motion to Dismiss of Defendants James Kearney,

Thomas Jenkins, and the Knights of Columbus, and Defendant Aetna's Motion to

Dismiss Plaintiff's June 26, 2006 Amended Complaint (Plaintiff's Fourth

Amendment), and the Plaintiff's response thereto.[1]  For the reasons set forth

below, both Motions are granted in part and denied in part.

### II.  Facts

In June 1995, Plaintiff Thomas Olick entered into an employment contract

("the Contract") with Defendant Knights of Columbus ("Knights") whereby

---

[1] Both Motions to Dismiss also include motions to strike portions of the Complaint
pursuant to FED. R. CIV. P. 12(f) which will be addressed at the end of this Memorandum.

1

Knights authorized Plaintiff to sell its insurance products to members of five

Knights of Columbus Councils.[2]  See Amended Compl., ¶¶ 10, 14.  Shortly after

signing the Contract, Plaintiff became eligible for and purchased group health

insurance for his wife and children from Defendant Aetna Life Insurance

Company ("Aetna").  Id. ¶ 35.  Plaintiff paid all required premiums for this

insurance until February 15, 2006.  Id. ¶ 36.

Beginning in February 2005, Plaintiff's relationship with Knights, and

especially with Defendant James Kearney ("Kearney"), Knights' general agent,

began to sour.  Plaintiff alleges that, over the next year, Defendants Knights and

Kearney reduced Plaintiff's sales territory without reducing his sales quota, id. ¶¶

120, 126, 128, and acted in numerous other ways to sabotage his sales efforts (e.g.,

by withholding information regarding Plaintiff's territory, failing to inform

Plaintiff of his customers' overdue premiums, punishing Plaintiff for his

opposition to illegal sales practices, and refusing to approve policies written by

Plaintiff).  Id. ¶¶ 129, 131, 133, 138, 142, 145, 147, 152, 157, 169, 176, 179, 181,

183, 189.  Plaintiff further alleges that Knights improperly reduced his

commissions on two occasions, id. ¶¶ 292, 294–297, and that Defendant Thomas

---

[2] The Knights of Columbus is a Catholic fraternal organization whose members take oaths "pledging, among other things, secrecy about the Knights' ceremonies and obedience to the Knights' Charter, Constitution, and Laws."  See Amended Compl., ¶¶ 4, 26.

Jenkins ("Jenkins"), a fellow Field Agent for Knights, unlawfully took over his former sales territory and interfered with his sales efforts. Id. ¶¶ 152, 181, 183.

Despite these clashes with his colleagues and superiors, Plaintiff claims that he was never formally terminated, id. ¶ 90, and thus never became ineligible for his group health insurance. Yet the COBRA Notice (dated February 28, 2006) that Plaintiff received from Knights on March 1, 2006 indicates that Plaintiff was fired on November 1, 2005. Id. ¶ 37, Exhibit 3. In any case, Plaintiff alleges that after March 1, 2006, Defendant Aetna informed Plaintiff that he and his family were no longer covered and refused to pay more than $3,000 in medical bills that should have been covered by his group health insurance plan. Id. ¶¶ 49–51, 81. Soon thereafter, Plaintiff appealed Aetna's claims decisions orally and in writing, but received no response. Id. ¶¶ 52–57.

Plaintiff's first Complaint was filed on February 15, 2006 in the Court of Common Pleas for Northampton County against Knights and Kearney. On March 13, before Defendants responded, Plaintiff amended the Complaint to add Aetna as a Defendant. On April 3, Plaintiff amended his Complaint again; on April 11, Aetna, with the consent of Knights and Kearney, removed the action to this court. On April 26, Plaintiff filed a new Complaint without leave of court, and that Complaint was stricken on June 5. The Amended Complaint at issue here, which

added Jenkins as a Defendant, was filed on June 26.

The Amended Complaint consists of eight counts: (1) violations of ERISA and COBRA, (2) breaches of fiduciary duty under ERISA, (3) breaches of contract, including breaches of the implied covenant of good faith and fair dealing, (4) tortious interference with contract, (5) retaliation and unfair insurance practices, (6) age discrimination and retaliation, (7) "job discrimination," and (8) conversion and breach of contract.

### III.  Standard of Review

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the complaint.  See Jodek Charitable Trust, R.A. v. VerticalNet, Inc., 412 F. Supp. 2d 469, 474 (E.D. Pa. 2006) (citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).  In considering the motion, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them when viewing them in the light most favorable to the non-movant, see Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994), but the court need not credit bald assertions or legal conclusions.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Moreover, the court should look only to the facts alleged in the complaint and its attachments without reference to other parts of the record.  See Jordan, 20 F.3d at 1261.  The court

should grant the motion only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957).

## IV.  Discussion

### A.  Count I – ERISA and COBRA Claims

In Count I of the Complaint, Plaintiff sets forth claims against Defendants Knights of Columbus ("Knights") and Aetna Life Insurance Company ("Aetna") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq. (2006), and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 100 Stat. 227, as amended, 29 U.S.C. § 1161 et seq. (2006).

#### 1.  ERISA Claims Against Knights and Aetna

Plaintiff sets forth two ERISA claims against Defendants Knights and Aetna.  First, Plaintiff alleges that, under § 502(a)(1)(B) of ERISA, Knights and Aetna are liable for approximately $3,000 in medical expenses for which coverage was refused between November 1, 2005 and March 1, 2006.  See Amended Compl., ¶ 81.  Second, Plaintiff alleges that ERISA (presumably § 502(a)(3)(B) thereof) requires that Knights and Aetna return all premiums paid by Plaintiff after November 1, 2005.  See id. ¶ 85.

5

### a.  The § 502(a)(1)(B) Claims

With regard to Plaintiff's § 502(a)(1)(B) claim against Aetna, Defendant's motion is denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.  Under § 502(a)(1)(B), a participant or beneficiary of a group health plan may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B) (2006).  Here Plaintiff has alleged that Aetna has improperly refused to cover his medical expenses, so his claim should not be dismissed at this time.[3]

Plaintiff's § 502(a)(1)(B) claim against Knights must be dismissed with prejudice, however, because Knights, the plan administrator,[4] is not a proper

---

[3] Defendants argue stridently that Plaintiff's ERISA claims should be dismissed, because he has failed to exhaust the administrative remedies available under his plan.  See, e.g., Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990) ("Except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan.").  The court disagrees.  By "sen[ding] a written 'Appeal' and request[ing] that [Aetna] reconsider its aforementioned Denial and/or Demand Notices" within 180 days of receiving his adverse benefit decision, Plaintiff complied with the appeal procedures set forth in "Summary of Coverage" (which Plaintiff has incorporated into his Complaint).  See Amended Compl., ¶¶ 54, 72; cf. Thomas v. Kemper Nat'l Ins. Cos., 984 F. Supp. 885, 891 (E.D. Pa. 1997) (dismissing plaintiff's ERISA claim for failure to exhaust administrative remedies under the plan where "[p]laintiff [did] not contend that she ever requested a review of defendants' decision").

[4] ERISA defines the "plan administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated."  29 U.S.C. § 1002(16)(A)(i) (2006). The "Summary of Coverage" issued by Plaintiff's plan makes it clear that Knights is the

defendant.  Courts have disagreed on this point, but, in the absence of binding precedent, this court believes the better view is that a "plan administrator" (like Knights) is not a proper defendant under § 502(a)(1)(B).  See Guiles v. Metropolitan Life Ins. Co., No. Civ. A. 00-5029, 2002 WL 229696 (E.D. Pa. Feb. 13, 2002) (so holding and distinguishing Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226 (3d Cir. 1994)).

### b.  The § 502(a)(3)(B) Claims

With regard to Plaintiff's § 502(a)(3)(B) claims against Knights and Aetna for reimbursement of premiums paid after November 1, 2005, Defendants' motions are denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.  Under § 502(a)(3)(B), a group health plan participant (like Plaintiff) may sue "to obtain other appropriate equitable relief (i) to redress [any act or practice which violates any provision of this subchapter or the terms of the plan]," 29 U.S.C. § 1132(a)(3)(B) (2006), and such a participant is

---

administrator of Plaintiff's plan.  See Notice of Removal, Exhibit 5 ("Additional Information Provided by Knights of Columbus").  The court's consideration of the "Summary of Coverage" in ruling on Defendants' motions to dismiss does not convert these motions into motions for summary judgment under FED. R. CIV. P. 56, because Plaintiff has expressly incorporated the "Summary of Coverage" into his Amended Complaint.  See Amended Compl., ¶¶ 72, 73, 87; see also Jordan, 20 F.3d at 1261; 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.34[2] (3d ed. 2003) ("In deciding whether to dismiss, the court may consider only the facts alleged in the pleadings, the documents attached as exhibits or *incorporated by reference* in the pleadings, and matters of which the judge may take judicial notice.") (emphasis added).

not required to exhaust administrative remedies.  See Zipf v. Am. Tel. & Tel. Co.,

799 F.2d 889, 891 (3d Cir. 1986).  Moreover, both the plan administrator

(Knights) and the plan itself (Aetna) are proper defendants in a claim under §

502(a)(3)(B).  See Curcio, 33 F.3d at 234.  Plaintiff's claim therefore turns on

whether Plaintiff's coverage ended on November 1, 2005.  If so, Plaintiff is

entitled to reimbursement of premiums paid after that date, because she was no

longer eligible for the plan.[5]  If not, Plaintiff is not entitled to reimbursement.

Given the parties' conflicting assertions regarding when Plaintiff was terminated,

Knights and Aetna's motions to dismiss these claims are denied without prejudice

with leave to renew by motion for summary judgment at the close of discovery.

Compare Amended Compl., ¶ 90 (denying that Plaintiff was ever formally

terminated) with Amended Compl., Exhibit 3 (Knights' COBRA Notice –

indicating that Plaintiff was terminated on November 1, 2005).

## 2.  COBRA Claims Against Knights and Aetna

Plaintiff also alleges that Defendants Knights and Aetna violated §§

---

[5] Plaintiff's equitable claim for reimbursement would take the form of a claim for unjust enrichment.  See Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 447 (3d Cir. 2004) ("Unjust enrichment is . . . an equitable doctrine[, with the following elements:] benefits conferred on one party by another, appreciation of such benefits by the recipient, an acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value.") (internal citation omitted); see also Ream v. Frey, 107 F.3d 147, 153 n.5 (3d Cir. 1997).

502(a)(1)(A) and 606(a)(4) of COBRA by failing to timely give Plaintiff (and his spouse and children) the statutorily required notice of their right to elect continuing coverage after Plaintiff's alleged termination. See Amended Compl., ¶¶ 37, 38, 82, 83.

Aetna's motion to dismiss is granted, because, in this case, Aetna is not a proper defendant under §§ 502(a)(1)(A) and 606(a)(4) of COBRA. Section 502(a)(1)(A) permits a group health plan participant (like Plaintiff) to sue "for the relief provided for in subsection (c) of this section," and § 502(c)(1)(A) allows Plaintiff to sue "[a]ny *administrator* (A) who fails to meet the requirements of paragraph (1) or (4) of section [606] of this title . . . with respect to a participant or beneficiary." (Emphasis added). Like the court in Estate of Fields v. Provident Life & Accident Ins. Co., No. 99-CV-4261, 1999 WL 1257290, at *2 (E.D. Pa. Dec. 23, 1999), which considered the same issue, this court is "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA." Id. (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147 (1985)).  Since Aetna is not the "plan administrator" as that term is defined by ERISA, see note 1, supra, Plaintiff's COBRA claim against Aetna is dismissed with prejudice.  See Levesque v. Kemper Nat'l Serv., Inc., No. 04-4143, 2006 WL 1686624, at *1 (E.D. Pa. June 14, 2006) (citing Hiney Printing Co. v. Brantner,

243 F.3d 956, 960 (6th Cir. 2001)); <u>Reinert v. Giorgio Foods, Inc.</u>, No. Civ. A. 97-CV-2379, 1999 WL 364499, at *6 (E.D. Pa. June 25, 1997) (citing <u>Davis v. Liberty Mut. Ins. Co.</u>, 871 F.2d 1134, 1138 (D.C. Cir. 1989)); <u>Cohen v. Gross, Sklar & Metzger, P.C.</u>, No. 88-5009, 1992 WL 38387, at *7 (E.D. Pa. Feb. 25, 1992) (citing <u>Moran v. Aetna Life Ins. Co.</u>, 872 F.2d 296, 298–99 (9th Cir. 1989)).

Knights' motion to dismiss this claim is denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.  Section 606(a)(4), as implemented by 29 C.F.R. § 2590.606-4, requires that an employer that also serves as plan administrator (like Knights) give each qualified beneficiary notice of his or her right to continuing coverage (i.e., her COBRA Notice) within 44 days of the termination of the covered employee, unless the employee is terminated for gross misconduct.  In this case, Plaintiff claims that he was never formally terminated, <u>see</u> Amended Compl., ¶ 90, but the COBRA Notice (dated February 28, 2006) that Plaintiff received from Knights on March 1, 2006 indicates that Plaintiff was fired on November 1, 2005.[6]  <u>See</u> Amended Compl., ¶ 37, Exhibit 3.  Given these conflicting assertions regarding Plaintiff's termination, Knights' motion to dismiss Plaintiff's COBRA claim is denied without prejudice

---

[6] If the COBRA Notice states the correct termination date, Knights violated § 606(a)(4) and 29 C.F.R. § 2590.606-4 for 75 days before Plaintiff received the required notice.

with leave to renew by motion for summary judgment at the close of discovery.

### B.  Count II – ERISA Claims for Breach of Fiduciary Duty

In Count II of the Complaint, Plaintiff alleges that Aetna is liable for five, and Knights liable for four, separate breaches of fiduciary duty under §§ 502(a)(2) and 409(a) of ERISA, 29 U.S.C. §§ 1132(a)(2) and 1109(a).  See Amended Compl., ¶¶ 91, 95, 97, 99, 109, 110, 113, 117.  All of these alleged breaches of fiduciary duty seek extra-contractual damages that would be paid to Plaintiff, not the plan,[7] so they are improper under ERISA.  See Massachusetts Mut. Life Ins.

---

[7] Plaintiff alleged the following six breaches of fiduciary duty by Aetna and Knights:

91.  By failing to reasonably investigate whether there was a termination on 11/1/05, Aetna did not act as a prudent person, was negligent and breached the fiduciary duties it owed to the Plaintiff and his family.
. . . .
95.  Defendants Knights and Aetna breached their fiduciary duties owed to the Plaintiff and his family by causing the COBRA Notice to be sent to him on or about 2/28/06.
. . . .
97.  In argumento [sic], Defendants Knights and Aetna breached their fiduciary duties owed to the Plaintiff and his family by demanding payments from 11/1/05 through 3/1/06 to obtain health insurance provided under COBRA even though he had already paid those premiums.
. . . .
99.  Defendants breached their fiduciary duties owed to the Plaintiff by failing to provide a timely COBRA Notice so that he could continue his life insurance coverage by applying for conversion of the same within 31 days of the "qualifying event" as provided by the Summary of Coverage.
. . . .
113.  In argumento [sic], Defendant Knights deducted 401-K contributions from the Plaintiff's paychecks after 11/1/05 and thus, through negligence and/or an intentional breach of the fiduciary duties owed to the Plaintiff caused him to incur tax liabilities in an amount in excess of $1,000.

<u>Co. v. Russell</u>, 473 U.S. 134, 144 (1985) (holding that a plan participant or beneficiary may not recover extra-contractual damages in an ERISA suit for breach of fiduciary duty under §§ 502(a)(2) and 409(a); only the plan may recover damages in such cases); <u>see also</u> <u>Varity Corp v. Howe</u>, 516 U.S. 489, 509 (1996) (reaffirming <u>Russell</u>).  Therefore, all of Plaintiff's claims under ERISA for breach of fiduciary duty are dismissed with prejudice.

### C.  Count III – Breach of Contract

In Count III of the Complaint, Plaintiff alleges that Defendants Knights and James Kearney ("Kearney") are liable for numerous breaches of the employment contract ("Contract").  More specifically, Plaintiff alleges that Knights and Kearney breached paragraph 2 of the Contract by reducing his sales territory while leaving his production quota unchanged.  <u>See</u> Amended Compl., ¶¶ 120, 128.  Plaintiff also alleges numerous breaches of the implied covenant of good faith and fair dealing.  <u>See</u> <u>id.</u> ¶¶ 129, 131, 133, 138, 142, 145, 147, 152, 157, 169, 176, 179,

---

. . . .

117.  By refusing to consider, or even acknowledge, the Plaintiff's appeal [of plan decisions], Defendant Aetna breach [sic] its fiduciary duties owed to the Plaintiff and his family.

<u>See</u> Amended Compl.

181, 183, 189.[8]

Defendants' motions to dismiss Plaintiff's claims for alleged breach of paragraph 2 of the Contract are denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.  Although the Contract declares that "[t]he Order [i.e., Knights] can change or revoke the assignment of designated councils at any time," see Amended Compl., Exhibit 3, ¶ 2, Plaintiff's allegation is that Kearney changed his council assignments.  See id. ¶ 120. Kearney, Knights' General Agent, "can change or revoke the assignment of councils *in accordance with guidelines established by the Order*."  Id. Exhibit 3, ¶ 2 (emphasis added).  The guidelines referred to in that paragraph are not before the court, so it would be improper to dismiss Plaintiff's claims against Knights and Kearney at this time.[9]

---

[8] The court will apply Connecticut law to Plaintiff's contractual claims in Count III, because Connecticut's substantial relationship to the parties and the absence of a fundamental public policy objection to the application of Connecticut contract law to this case make it appropriate (under Pennsylvania law) to enforce the Contract's choice of law clause.  See Assicurazioni Generali, S.P.A. v. Clover, 195 F.3d 161, 164–65 (3d Cir. 1999) (citing Smith v. Commonwealth Nat'l Bank, 557 A.2d 775, 777 (Pa. Super. 1989), alloc. denied, 569 A.2d 1369 (Pa. 1990)); RESTATEMENT (SECOND) CONFLICT OF LAWS § 187 (1971).

[9] If Kearney were held liable for violating these "guidelines" in changing Plaintiff's council assignments, Knights probably also would be held liable as Kearney's principal.  See Meyer v. Holley, 537 U.S. 280, 285 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."); RESTATEMENT (SECOND) OF AGENCY § 219(1) (1957).

Defendants' motions to dismiss Plaintiff's claims for breach of the implied covenant of good faith and fair dealing also are denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.  There are two reasons for this.  First,

> Every contract imposes an obligation of good faith and fair dealing between the parties in its performance and its enforcement, and if the promise of the defendant is not expressed by its terms in the contract, it will be implied. . . .  In determining whether a party has breached the obligation or covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties.  *Thus, whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact*.

23 WILLISTON ON CONTRACTS § 63:22 (4th ed. 2006) (emphasis added).  Second, this court has found no case holding that Connecticut is one of "perhaps the majority of [states that] decline[s] to find a breach of the implied covenant of good faith and fair dealing absent breach of an express term of the contract."  Id.[10]  In

---

[10] Under Connecticut law, to prevail on a claim for breach of the implied covenant of good faith and fair dealing, the plaintiff must establish three elements:

> [F]irst, that the plaintiff and defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract, the defendant was acting in bad faith.

light of these legal principles and Plaintiff's allegations, Defendants' motions to dismiss Plaintiff's claims are denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.

### D.  Count IV – Tortious Interference with Contract

In Count IV of the Complaint, Plaintiff alleges that Defendants Knights, Kearney, and Thomas Jenkins ("Jenkins") are liable for tortiously interfering with his performance of the Contract.  See Amended Compl., ¶¶ 194–215.[11]  All three Defendants' motions to dismiss are denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.

The Connecticut Supreme Court "has long recognized a cause of action for tortious interference with contract right or business actions."  Blake v. Levy, 464 A.2d 52, 54 (Conn. 1983),[12] and Plaintiff's allegations appear sufficient to state a

Jones v. H.N.S. Mgmt. Co., Inc., No. CV020471419S, 2003 WL 22332837, at *4 (Conn. Super. Ct. Sept. 25, 2003).

[11] This court will enforce the Contract's choice of law clause with respect to Plaintiff's tortious interference claims (for the reasons given in the foregoing discussion of Plaintiff's claims in Count III), and will therefore apply Connecticut law to those claims.  See In re Allegheny Internat'l, Inc., 954 F.2d 167, 178 (3d Cir. 1992) (enforcing a similar choice of law clause with regard to a claim for fraudulent inducement to contract); Indictor v. Tucker Leasing Capital Corp., No. Civ. A. 91-4125, 1992 WL 132583, at *2 (E.D. Pa. June 3, 1992) (enforcing a similar choice of law clause with regard to a claim for tortious interference with contract).

[12] According the Connecticut Supreme Court, the elements of a tortious interference claim are:  "(1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the

claim under the law of those cases.  The only two issues here are:  (1) whether

Knights may be liable for tortiously interfering with a contract to which it is a

party, and (2) whether Kearney and Jenkins, as agents of Knights, may be liable

for tortiously interfering with a contract to which their principal is a party.

This court has found no case squarely holding that a party to a contract

cannot be liable for tortious interference with that contract.  See Weeks v. Office

of Urban Affairs, No. CV92-0339298, 1994 WL 516561, at *4 (Conn. Super. Ct.

Sept. 12, 1994) ("The Supreme Court has not decided whether a claim for tortious

interference can be made [against] a party to a contract.").  However, it is well

established that:

> [a]n agent acting legitimately within the scope of his authority cannot
> be held liable for interfering with or inducing his principal to breach a
> contract between his principal and a third party, because to hold him
> liable would be, in effect, to hold the [principal] liable in tort for
> breaching its own contract.  An agent, however, can be held liable for
> such interference or inducement if he did not act legitimately within
> his scope of duty but used the corporate power improperly for
> personal gain.

Malik v. Carrier Corp., 202 F.3d 97, 110 (2d Cir. 2000) (citing Murray v.

---

defendants' tortious conduct."  Appleton v. Bd. of Educ. of Town of Stonington, 757 A.2d 1059,
1063 (Conn. 2000).  The Connecticut Supreme Court, however, has made clear that "[e]very act
of interference is not . . . made tortious."  Blake, 464 A.2d at 55.  "[T]he test is whether the
actor's behavior is 'improper.'"  Id. (citing the RESTATEMENT (SECOND) OF TORTS).  Finally, "it
is not essential to the cause of action that the tort has resulted in an actual breach of contract."
Wellington Sys., Inc., v. Redding Group, Inc., 714 A.2d 21, 30 (Conn. Super. Ct. 1998) (citing
Harry A. Finman & Son, Inc. v. Connecticut Truck & Trailer Serv. Co., 363 A.2d 86 (1975)).

Bridgeport Hosp., 480 A.2d 610 (Conn. Super. Ct. 1984)).  In order to deprive an agent of this immunity,

> the plaintiff must establish that [the agent] acted solely for his own benefit and benefit to the [principal] played no role therein.  Such a defendant is insulated from liability even if his actions were motivated in part by self-interest, provided he believed he was serving the [principal].

Espinosa v. Connecticut College, No. 52-28-72, 1994 WL 320222, at *5 (Conn. Super. Ct. June 27, 1994).

Under this case law, Plaintiff's allegations are sufficient to state claims for tortious interference with contract against Knights, Kearney, and Jenkins.  Knights is not immune to Plaintiff's claim, see Weeks, 1994 WL 516561, at *4, and if Kearney and Jenkins acted as Plaintiff has alleged, they probably exceeded the scope of their authority as agents of Knights.  See Bridgeport Harbor Place I LLC v. Ganim, No. X06CV040184523S, 2006 WL 493352, at *2 (Conn. Super. Ct. Feb. 16, 2006) (denying defendant agents' motions to dismiss, because "plaintiff has alleged facts, which, if proven, establish that the . . . defendants acted outside of their authority as agents . . . in the actions they took to interfere with the plaintiff's contract").  Therefore, all three Defendants' motions to dismiss are denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.

### E.  Count V – Retaliation and Unfair Insurance Practices

In Count V of the Complaint, Plaintiff alleges that Defendant Aetna:  (1)

illegally retaliated against Plaintiff for filing an age discrimination claim, <u>see</u>

Amended Compl., ¶ 217, and (2) violated Pennsylvania and Connecticut statutes

prohibiting unfair insurance practices and bad faith conduct by insurers.  <u>See</u>

Amended Compl., ¶¶ 219, 222, 225, 231.[13]

#### 1.  The Retaliation Claim

Plaintiff's retaliation claim against Aetna is dismissed without prejudice for

failure to exhaust administrative remedies.  Pennsylvania and Connecticut law and

the federal Age Discrimination in Employment Act ("ADEA") – 43 P.S. § 955(d),

CONN. GEN. STAT. § 46a-60(a)(4), and 29 U.S.C. § 623(d), respectively – all make

it unlawful for an employer to retaliate against an employee either because she has

opposed prohibited discrimination (including age discrimination) or filed a claim

alleging prohibited discrimination.  However, all three statutes also require that

the aggrieved employee file a claim with a designated administrative agency

before she may file a claim in state or federal court.  <u>See</u> 43 P.S. §§ 959, 962

(2006); <u>Clay v. Advanced Computer Applications, Inc.</u>, 559 A.2d 917, 919 (Pa.

---

[13] Although Count V also purports to state a claim for breach of contract, the court could find no such allegation.

18

1989);[14] see also CONN. GEN. STAT. §§ 46a-82, 94, 100, 101 (2006); Sullivan v.

Bd. of Police Comm'rs of the City of Waterbury, 491 A.2d 1096, 1099 (Conn.

1985);[15] see also 29 U.S.C. §§ 626, 633 (2006); Watson v. Eastman Kodak Co.,

235 F.3d 851, 854 (3d Cir. 2000).[16]  Here, the Amended Complaint fails to allege

that Plaintiff pursued any of these available remedies, so Plaintiff's retaliation

claims against Aetna must be dismissed without prejudice.

------------------------------------------------------------

[14] For information on Pennsylvania's exhaustion requirements, see Marriot Corp. v. Alexander, 799 A.2d 205, 207 (Pa. Cmwlth. 2002) ("To bring suit under the Pennsylvania [Human Relations] Act, a plaintiff must first file an administrative complaint with the Pennsylvania [Human Relations] Commission [("PHRC")] within 180 days of the alleged act of discrimination.")

[15] For information on Connecticut's exhaustion requirements, see Okun v. Misiewicz, No. CV9867084S, 2001 WL 985060, at *3 (Conn. Super. Ct. July 31, 2001) ("Pursuant to General Statutes § 46a-82(a), any person 'claiming to be aggrieved by an alleged discriminatory practice' may file a complaint with the [Commission on Human Rights and Opportunities ("CHRO")]. Under General Statutes § 46a-94(a) following the final order of the CHRO or dismissal of the complaint by the CHRO, the complainant may appeal to the Superior Court in accordance with § 4-183.  The complainant may also file an original action with the Superior Court pursuant to §§ 46a-100 and 46a-101.  General Statutes § 46a-100 provides, in pertinent part, that '[a]ny person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with Section 46a-82 and who has obtained a release from the commission in accordance with Section 46a-83a or 46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred.'  General Statutes § 46a-101(a) further provides that '[n]o action may be brought in accordance with Section 46a-100 unless the complainant has received a release from the commission.").

[16] For information on the exhaustion requirements under the ADEA, see O'Neil v. Montgomery County Cmty. College, No. 05-5169, 2006 WL 1648990, at *2 (E.D. Pa. June 12, 2006) (The ADEA "require[s] a plaintiff to file a complaint with the [Equal Employment Opportunity Commission ("EEOC")] within 300 days of the alleged unlawful employment activity prior to bringing suit.  Under a sharing agreement between the PHRC and the EEOC, a complaint filed with the PHRC can be deemed filed with the EEOC, even if the complainant did not explicitly request a dual filing") (internal citations omitted).

## 2.  The Unfair Insurance Practices Claims

Plaintiff's claims under Pennsylvania and Connecticut law that Aetna engaged in unfair insurance practices and acted in bad faith are dismissed with prejudice.  Specifically, Plaintiff alleges that Aetna has violated Pennsylvania and Connecticut law by:  (1) refusing to pay valid claims, (2) discussing settlement in bad faith, (3) compelling litigation of a denied claim, (4) unlawfully accepting premiums when Plaintiff was not covered, (5) canceling coverage without notice, and (6) refusing to consider Plaintiff's appeal and request for related information. See Amended Compl., ¶¶ 219, 222, 225, 231.

Plaintiff's claim under the Pennsylvania Unfair Insurance Practices Act, 40 P.S. § 1171.4, is dismissed with prejudice, because there is no private right of action under that Act.  See D'Ambrosio v. Nat'l Mut. Cas. Ins. Co., 431 A.2d 966, 970 (Pa. 1981) (so holding).

Although Plaintiff may sue Aetna indirectly under the Connecticut Unfair Insurance Practices Act ("CUIPA"), CONN. GEN. STAT. § 38a-815,[17] and directly under the Pennsylvania statute that prohibits an insurer from acting in bad faith

---

[17] See Mead v. Burns, 509 A.2d 11, 17–18 (Conn. 1986) (holding that a cause of action exists under the Connecticut Unfair Trade Practices Act for violations of the CUIPA); Green v. Gov't Employees Ins. Co., No. CV040287116S, 2005 WL 704912, at *1 n.1 (Conn. Super. Ct. Feb. 25, 2005) (citing Mead for the same proposition).

toward an insured, 42 PA. C.S.A. § 8371, those claims also are dismissed with prejudice, because they are pre-empted by ERISA.  The case law makes clear that the scope of ERISA pre-emption is broad.  In Aetna Health Inc. v. Davila, 542 U.S. 200 (2004), the United States Supreme Court declared that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear Congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  Id. at 209.  More precisely, the Court held pre-empted a claim under state law that arose out of the defendant insurer's refusal to pay an allegedly valid claim.  See id. at 211.  In Barber v. Unum Life Ins. Co. of America, 383 F.3d 134, 140–41 (3d Cir. 2004), the Third Circuit held that ERISA also pre-empts 42 PA. C.S.A. § 8371, which allows an insured person to recover for her insurer's bad faith conduct.  More recent cases in this District have held that ERISA pre-empts many other claims related to insurance plans.  See Wells v. Genesis Health Ventures, Inc., No. Civ. A. 05-697, 2005 WL 2455371, at *2–3 (E.D. Pa. Sept. 16, 2005) (pre-empting an insured's claims under the Pennsylvania Unfair Insurance Practices Act); Cureton v. Verizon Serv. Corp., No. 2:05-CV-00213-LDD, 2005 WL 1785302, at *4 (E.D. Pa. July 25, 2005) (extending ERISA pre-emption to any state-law claim that could have been brought under § 502(a)); Wassil v. Advanced Tech. Lab., Inc.,

No. Civ. A. 95-6777, 1996 WL 238688, at *2–3 (E.D. Pa. May 7, 1996) (pre-

empting breach of contract and unjust enrichment claims).

Under the above-cited case law, ERISA pre-empts Plaintiff's claims.

Allegations (1), (5), and (6) – that Aetna refused to pay Plaintiff's valid claims,

unlawfully canceled Plaintiff's coverage, and refused to consider Plaintiff's appeal

and request for related information – squarely fall within the holding of <u>Davila</u>.

Allegations (2) and (3) – that Aetna discussed settlement in bad faith and therefore

compelled Plaintiff to litigate – squarely fall within the holding of <u>Barber</u>.

Allegation (4) – that Aetna unlawfully accepted premiums when Plaintiff was not

covered – is pre-empted under <u>Cureton</u> and <u>Wassil</u>, because Count I of the

Complaint states a claim under § 502(a)(3)(B) for reimbursement of the allegedly

unlawfully accepted premiums.  Therefore, these state-law claims are dismissed

with prejudice.

### F.  Count VI – Age Discrimination and Retaliation

In Count VI of the Complaint, Plaintiff alleges that Defendants Knights,

Kearney, Jenkins, and Aetna engaged in unlawful age discrimination and retaliated

against Plaintiff after he filed this lawsuit, but it does not allege any exhaustion of

administrative remedies.  <u>See</u> Amended Compl., ¶¶ 238–264.  Although Plaintiff

eventually may be able to state a claim under 43 P.S. §§ 955(a) and 955(d), 46a

C.G.S.A. §§ 46a-60(a)(1) and (a)(4), and 29 U.S.C. §§ 623(a) and (d), his claims must be dismissed without prejudice, because he has failed to exhaust his administrative remedies.  See Watson, 235 F.3d at 854; Clay, 559 A.2d at 919; Sullivan, 491 A.2d at 1099.

### G.  Count VII – "Job Discrimination"

In Count VII of the Complaint, Plaintiff alleges that Defendants Knights and Kearney unlawfully "discriminated" against Plaintiff under 43 P.S. § 955 and CONN. GEN. STAT. § 46a-60 by "not provid[ing] the same benefits to him that [Knights] did to its other employees, including but not limited to matching 401-K contributions; health, life and disability benefits; paid holidays; paid vacations; paid sick days; unemployment insurance, and other similar benefits,"  Amended Compl., ¶ 280, and by generally making his job unpleasant.  See id. at ¶¶ 267–279. Since there is no indication that Plaintiff has exhausted his administrative remedies with respect to these allegations, Plaintiff's claims must be dismissed without prejudice.  See Clay, 559 A.2d at 919; Sullivan, 491 A.2d at 1099.

### H.  Count VIII – Conversion and Breach of Contract

In Count VIII of the Complaint, Plaintiff alleges that Defendant Knights is liable for conversion and breaching the Contract, because it: (1) unlawfully deducted money from his commissions in the form of the "FD AUTOM Fee," see

23

Amended Compl., ¶ 292, and (2) improperly reduced his commission from an annuity sale to Michael and Annette Potkovac.  See id. ¶¶ 294–297.  Because Knights' alleged conduct states claims for both conversion[18] and breach of Knights' contractual obligation to pay Plaintiff's commissions according to the Schedule of Commissions,[19] Knights' motions to dismiss these claims are denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.

## I.  Rule 12(f) Motions to Strike

Defendant Aetna's motion to dismiss includes a motion to strike portions of the Complaint under FED. R. CIV. P. 12(f).[20]  Specifically, Aetna moves the court to strike the Plaintiff's demand for a jury trial as to Counts I and II (which allege claims under ERISA and COBRA), as well as any requests in those Counts for

---

[18] Under Connecticut law, "to establish a prima facie case of conversion, the plaintiff ha[s] to demonstrate that (1) the material at issue belonged to the plaintiff, (2) that [defendant] deprived the plaintiff of that material for an indefinite period of time, (3) that [defendant's] conduct was unauthorized, and (4) that [defendant's] conduct harmed the plaintiff."  News America Mktg. In-Store, Inc. v. Marquis, 862 A.2d 837, 848 (Conn. App. 2004).

[19] See Amended Compl., Exhibit 1, ¶ 1 ("This Agreement, which includes the attached Schedule of Commissions and Expense Allowance, supersedes all of the Field Agent's previous Field Agent Contracts.").  The "Schedule of Commissions" was not attached to or incorporated into the Complaint or Defendants' motions to dismiss, and therefore could not be considered in deciding this motion.

[20] Under FED. R. CIV. P. 12(f), the court may, upon the motion of a party or sua sponte, "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

compensatory damages,[21] punitive damages,[22] or damages for emotional distress.[23] To the extent it is not moot, Aetna's motion to strike is denied without prejudice with leave to renew by motion for summary judgment at the close of discovery. (Aetna's motion to strike paragraphs 109, 110, and 118 is moot, because Count II – the Count in which those paragraphs are found – has been dismissed.)

Defendants Knights, Kearney, and Jenkins' motions to dismiss also include motions to strike portions of the Complaint under FED. R. CIV. P. 12(f). Specifically, Defendants seek to strike from the Complaint all references to settlement discussions,[24] requests for attorney's fees,[25] and requests for punitive damages.[26]  To the extent they are not moot, Defendants' motions to strike are denied without prejudice with leave to renew by motion for summary judgment at the close of discovery.  (Defendants' motions to strike paragraphs 101, 107, 118, 119, 235, 260, 261, 285, 286 are moot, because the Counts in which those paragraphs are found have been dismissed.)

---

[21] See Amended Compl., ¶ 85 (Count I), ¶ 109 (Count II).

[22] See id. ¶ 118 (Count II).

[23] See id. ¶ 110 (Count II).

[24] See id. ¶¶ 28, 29, 101, 107.

[25] See id. ¶¶ 84, 119, 192, 210, 235, 261, 285, 300.

[26] See id. ¶¶ 118, 193, 209, 260, 286, 299.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THOMAS W. OLICK,**<br>          **Plaintiff,**<br><br>          **v.**<br><br>**JAMES KEARNEY, et al.,**<br>          **Defendants.** | **CIVIL ACTION NO. 06-1531** |

**<u>ORDER</u>**

    **AND NOW,** this       day of September, 2006, upon consideration of

the Motion to Dismiss of Defendants James Kearney, Thomas Jenkins, and the

Knights of Columbus, and Defendant Aetna's Motion to Dismiss Plaintiff's June

26, 2006 Amended Complaint (Plaintiff's Fourth Amendment), and Plaintiff's

response thereto, it is hereby **ORDERED** that both Motions are **GRANTED IN**

**PART** AND **DENIED IN PART** as specified below:

    1.  With regard to Count I –

        A.  the motion to dismiss of Defendants Knights of Columbus

("Knights") is:

            i.  **GRANTED** – with respect to Plaintiff's claim under §

502(a)(1)(B) of ERISA, and that claim is **DISMISSED WITH**

**PREJUDICE**;

27

    ii.  **DENIED WITHOUT PREJUDICE** with leave to renew by motion for summary judgment at the close of discovery – with respect to Plaintiff's claims under § 502(a)(3)(B) of ERISA and §§ 502(a)(1)(A) and 606(a)(4) of COBRA;

  B.  the motion to dismiss of Aetna Life Insurance Company ("Aetna") is:

    i.  **DENIED WITHOUT PREJUDICE** with leave to renew by motion for summary judgment at the close of discovery – with respect to Plaintiff's claims under §§ 502(a)(1)(B) and 502(a)(3)(B) of ERISA;

    ii.  **GRANTED** – with respect to Plaintiff's claim under §§ 502(a)(1)(A) and 606(a)(4) of COBRA, and that claim is **DISMISSED WITH PREJUDICE**;

 2.  With regard to Count II, the motions to dismiss of Defendants Knights and Aetna are **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**;

 3.  With regard to Count III, the motions to dismiss of Defendants Knights and James Kearney ("Kearney") are **DENIED WITHOUT PREJUDICE** with leave to renew by motion for summary judgment at the close of discovery;

4.  With regard to Count IV, the motions to dismiss of Defendants Knights, Kearney, and Thomas Jenkins ("Jenkins") are **DENIED WITHOUT PREJUDICE** with leave to renew by motion for summary judgment at the close of discovery;

5.  With regard to Count V, Defendant Aetna's motion to dismiss Plaintiff's claims is **GRANTED** – Plaintiff's retaliation claims under 43 P.S. § 955(d), Conn. Gen. Stat. § 46a-60(a)(4), and 29 U.S.C. § 623(d) are **DISMISSED WITHOUT PREJUDICE**; Plaintiff's unfair insurance practices and bad faith claims under Conn. Gen. Stat. § 38a-815, 40 P.S. § 1171.4, and Pa. C.S.A. § 8371 are **DISMISSED WITH PREJUDICE**;

6.  With regard to Count VI, the motions to dismiss of Defendants Knights, Kearney, Jenkins, and Aetna are **GRANTED**, and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**;

7.  With regard to Count VII, the motions to dismiss of Defendants Knights and Kearney are **GRANTED**, and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**;

8.  With regard to Count VIII, Defendant Knights' motion to dismiss is **DENIED WITHOUT PREJUDICE** with leave to renew by motion for summary judgment at the close of discovery; and

9.  The motions to strike of Defendants Knights, Kearney, Jenkins, and Aetna are **DENIED WITHOUT PREJUDICE** with leave to renew by motion for summary judgment at the close of discovery.

**BY THE COURT:**

/s/ Marvin Katz

_____

**MARVIN KATZ, S.J.**